1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| SHARON FIELDS, | ) | Case No.  EDCV 07-1442-JTL |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

11
12
13
14
15
16
17

18

**PROCEEDINGS**

19     On November 8, 2007, Sharon Fields ("plaintiff") filed a Complaint seeking review of the

20 Social Security Administration's denial of her applications for Disability Insurance Benefits and

21 Supplemental Security Income benefits.  On November 27, 2007, plaintiff filed a Consent to

22 Proceed Before United States Magistrate Judge Jennifer T. Lum.  On March 17, 2008, Michael

23 J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before

24 United States Magistrate Judge Jennifer T. Lum.  Thereafter, on May 12, 2008, defendant filed

25 an Answer to the Complaint.  On July 18, 2008, the parties filed their Joint Stipulation.

26     The matter is now ready for decision.

27 ///

28 ///

**BACKGROUND**

On May 17, 2005, plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income benefits alleging a disability onset date of April 30, 1998. (Administrative Record ["AR"] at 47, 214; see AR at 12). The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration. (AR at 27, 28, 29-33, 42-46). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 40).

On April 18, 2007, the ALJ conducted a hearing in San Bernardino, California. (See AR at 232-58). Plaintiff appeared at the hearing without counsel and testified. (AR at 236-45, 246-51, 252-55, 257-58). Barbara Fields, plaintiff's mother, also appeared at the hearing and testified. (AR at 246). In addition, Corinne Porter, a vocational expert, testified at the hearing. (AR at 254-57). On May 3, 2007, the ALJ issued his decision denying benefits to plaintiff. (AR at 12-21). The ALJ found that plaintiff had the following severe impairments: diabetes mellitus, hypertension, ganglion cyst in the left wrist and obesity. (AR at 14). The ALJ noted that while plaintiff alleged that she suffers from back pain and depression, the evidence in the record did not support a finding that these impairments were severe. The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations. (Id.). The ALJ concluded that plaintiff retained the residual capacity to perform light work with some limitation in the use of her hands, and that plaintiff retained the residual functional capacity to perform her past relevant work as a tax preparer. (AR at 14-20). Moreover, the ALJ determined that plaintiff could perform jobs that exist in significant numbers in the national economy. (AR at 20-21). Accordingly, the ALJ concluded that plaintiff was not disabled from April 30, 1998, the alleged onset date, through May 3, 2007, the date of the decision. (AR at 21). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 2-4).

Thereafter, plaintiff appealed to the United States District Court.

///

///

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.     The ALJ failed to properly consider the opinion of Gurmeet S. Multani, M.D., plaintiff's treating physician.

2.     The ALJ failed to recontact Dr. Multani and fully develop the record with regard to plaintiff's mental impairment.

3.     The ALJ failed to properly discredit plaintiff's subjective complaints and the lay witness testimony of Herman Hill, plaintiff's husband, and Barbara Fields, plaintiff's mother.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.     The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.   Gurmeet S. Multani, M.D.**

Plaintiff argues that the ALJ failed to properly consider the opinion of Gurmeet S. Multani, M.D., plaintiff's treating physician.  (Joint Stipulation at 3-7).

On June 16, 2005, Dr. Multani completed an Evaluation Form for mental disorders indicating that he treated plaintiff once a month from August 8, 2003 though April 6, 2004.  (AR at 174-77).  When asked to describe plaintiff's present illness, Dr. Multani replied:

4

1    [Plaintiff] has been feeling depressed and overwhelmed.
2    [Plaintiff] is anxious and irritable.  [Plaintiff] has poor self-
3    esteem and is poorly motivated.  [Plaintiff] has feelings of
4    helplessness, hopelessness and worthlessness.  [Plaintiff] is
5    isolative and withdrawn.  [Plaintiff] has been feeling dejected.
6    [Plaintiff] has insomnia and decreased energy.  [Plaintiff] has
7    poor ability to carry out tasks.  [Plaintiff] is unable to deal with
8    problems and issues.  [Plaintiff] has poor ability to cope.

9  (AR at 174).  Dr. Multani noted that plaintiff had no past history or family history of psychiatric

10  problems.  (Id.).  He noted that plaintiff did not need assistance to "properly care for personal

11  affairs, do shopping, use transportation, pay bills maintain residence, care for grooming or

12  hygiene" and that she could take care of her funds and basic needs.  (AR at 176, 177).  He

13  stated that plaintiff was calm and cooperative, had fair judgment and insight, was able to deal

14  with reality and did not present delusions, hallucinations, paranoid ideations, confusion or mood

15  swings.  (AR at 175).  He also noted that plaintiff had "decreased energy and insomnia."  (Id.).

16      Dr. Multani further noted that plaintiff had difficulty interacting appropriately and

17  communicating effectively with others.  (AR at 176).  He noted that plaintiff had "poor

18  concentration," but could "complete everyday household routines and follow and understand

19  simple written or oral instructions."  (Id.).  He opined that plaintiff was "unable to carry out tasks

20  and work on goals and issues."  (Id.).  He concluded that plaintiff "should not be able to go for

21  training for work or apprenticeship for eight hours a day."  (Id.).  Notably, when asked if

22  plaintiff's condition could be expected to improve, Dr. Multani replied affirmatively: "Yes

23  [plaintiff's] condition can be expected to improve."  (AR at 176-77).

24      The ALJ is charged with determining a claimant's residual functional capacity based on

25  an evaluation of the evidence as a whole.  See 20 C.F.R. § 416.945; see also Magallanes v.

26  Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (the ALJ is responsible for determining credibility and

27  resolving conflicts in medical testimony).  The medical opinion of a treating physician is entitled

28  to special weight.  20 C.F.R. § 404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998);

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions rendered by treating physicians must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527, such as the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. Social Security Ruling ("SSR")[1] 96-2p; 20 C.F.R. § 404.1527(d)(2). Where the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. The ALJ may reject a controverted opinion of a treating physician's opinion only by providing specific and legitimate reasons supported by substantial evidence in the record. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ can meet this burden by setting out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). An ALJ may rely on the absence of objective findings to reject a treating physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings).

Here, the ALJ noted that the evaluation form completed by Dr. Multani indicated that Dr. Multani treated plaintiff "on[c]e a month from August 2003 through April 2004 for a major depression episode and prescribed Prozac and Desyrel for her symptoms."[2] (AR at 17; see AR

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[2] Dr. Multani indicated that plaintiff's current medications were 20 mg of Prozac, to be taken every morning, and 150 mg of Desyrel, to be taken every morning. (AR at 176). "Prozac is used for treating depression or obsessive-compulsive disorder (OCD) in adults and children. It is used to treat bulimia nervosa and panic disorder in adults." Drugs.com, http://www.drugs.com/cdi/prozac.html. "Desyrel is used for treating depression. It may also be used for relief of an anxiety disorder (eg, sleeplessness, tension), chronic pain." Drugs.com, http://www.drugs.com/cdi/desyrel.html.

at 174, 176).  The ALJ summarized Dr. Multani's findings in his decision:

> Dr. Multani asserted [plaintiff] was feeling depressed,
> overwhelmed, anxious, irritable, poor self-esteem, poor
> motivation, helplessness, hopelessness, and worthlessness.
> She was isolative and withdrawn with insomnia, and decreased
> energy.  Dr. Multani asserted [plaintiff] was unable to carry out
> tasks and work on goals and issues, and she should not be
> able to go for training for work or apprenticeship for eight hours
> a day.  He also asserted that [plaintiff's] symptoms were
> expected to improve.  [AR at 174-77].

(AR at 17).  The ALJ opined that plaintiff may have experienced an episode of depression around the time she testified that she underwent drug and alcohol rehabilitation treatment,[3] but concluded that there was no evidence that plaintiff's depression lasted 12 consecutive months or longer.  (AR at 17).

The ALJ did not err in his consideration of Dr. Multani's opinion.  The ALJ noted that Dr. Multani "offered no clinical findings or treatment records" to support his findings and that "there is no evidence of a longitudinal history of a psychiatric impairment, psychiatric hospitalizations, or prolonged outpatient treatment."  (AR at 17).  An ALJ may properly reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately supported by clinical findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see Baston v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form and not supported by the record as a whole, or by objective medical findings).[4]

Moreover, the ALJ's decision regarding the severity of plaintiff's mental disorder was

---

[3] At the hearing, plaintiff testified that she started using drugs and alcohol in 1986 (AR at 245), but has not "used" since she completed a rehabilitation program in November 2003.  (AR at 244).

[4] In support of her argument that the ALJ improperly rejected Dr. Multani's opinion, plaintiff also argues that the ALJ failed to meet his obligation to recontact Dr. Multani and further develop the record.  (See Joint Stipulation at 5).  This argument is addressed infra in Section C.

1   supported by substantial evidence in the record, including Dr. Multani's evaluation.  Dr. Multani

2   stated that he treated plaintiff for an eight-month period and that plaintiff's symptoms were

3   expected to improve.  See 20 C.F.R. §§ 404.1509, 416.909 (an impairment "must have lasted

4   or must be expected to last for a continuous period of at least 12 months").  The ALJ noted that

5   plaintiff has not required, nor received, psychiatric treatment other than the use of a mild anti-

6   depressant, and that plaintiff reported that after 2003, she stopped seeing her psychiatrist and

7   stopped taking psychotropic medications.  (AR at 17-18).  In addition, the ALJ discussed the

8   findings of Dr. Linda M. Smith, who performed a consultative psychiatric evaluation of plaintiff

9   on August 9, 2005.  (AR at 18; see AR at 178-83).  The ALJ noted that plaintiff reported she

10  had some outpatient treatment for about a year until 2003, and denied any current mental

11  health treatment, counseling or therapy, and denied taking any psychotropic medications.  (AR

12  at 18; see AR at 179).  The ALJ noted that Dr. Smith diagnosed plaintiff with a depressive

13  disorder, not otherwise specified, and a current Global Assessment of Functioning ("GAF")[5]

14  score of 64, which indicates only some mild symptoms; that Dr. Smith asserted that overall

15  plaintiff might be mildly impaired, but she was not seriously impaired; found that plaintiff was

16  not impaired in her ability to do a number of work-related activities including her ability to

17  understand, remember, complete simple or complex commands, comply with job rules, respond

18  to change or maintain persistence and pace in the workplace setting; and found that plaintiff

19  was only mildly impaired in her ability to interact appropriately with supervisors, coworkers or

20  the public.  (AR at 18; see AR at 182, 183).  The ALJ also noted that multiple State Agency

21  review examiners determined that plaintiff has no severe psychiatric impairment.  (AR at 19;

22  see AR at 195-213).  In this case, the ALJ set forth in a detailed and thorough manner the

23  bases of his conclusions and substantial evidence supports the ALJ's decision.  Thus, the ALJ

24  _____

25  [5]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational
    functioning used to reflect the individual's need for treatment."  Vargas v. Lambert, 159 F.3d 1161,

26  1164 n.2 (9th Cir. 1998).  A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g.,
    depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning

27  (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has
    some meaningful interpersonal relationships."  See Diagnostic and Statistical Manual of Mental

28  Disorders 34 (4th. ed, rev. 2000).

did not err in his consideration of Dr. Multani's opinion.

**C.**    **The ALJ's Duty to Develop the Record**

Plaintiff argues that the ALJ failed to meet his duty to recontact Dr. Multani to obtain the medical records documenting his treatment of plaintiff from August 2003 through April 2004. (Joint Stipulation at 11-12). Defendant argues that the requisite ambiguity to trigger the ALJ's duty to develop the record was not present and that the record was adequate to allow the ALJ to make a disability determination. (Joint Stipulation at 12-13).

In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991). As noted above, plaintiff was unrepresented at the hearing. (AR at 234-35). Thus, the ALJ's duty to develop the record in this case was "heightened." See, e.g., Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978); Higbee v. Sullivan, 975 F.2d 558, 561-562 (9th Cir. 1992). The duty to develop the record arises where the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §§ 404.1512(e), 416.912(e); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). When the evidence is ambiguous, or if the ALJ finds that the record is inadequate to allow for proper evaluation of disability, the ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

Plaintiff appears to argue that the absence of treatment notes or other evidence to support Dr. Multani's evaluation of plaintiff's mental disorders triggered the ALJ's duty to develop the record. Plaintiff's claim is without merit. Dr. Multani's report detailing his findings was clear and unambiguous. (AR at 174-77). Thus, the requisite ambiguity or inadequacy in Dr. Multani's findings did not trigger the ALJ's duty to further develop the record. See Mayes, 276 F.3d at 459. Moreover, there was substantial evidence in the record that supported the ALJ's determination that plaintiff did not suffer from a severe mental impairment, including the findings of Dr. Smith, who performed a consultative psychiatric evaluation of plaintiff (AR at 178-83), and the findings of the State Agency review examiners (AR at 195-213).

Moreover, although the ALJ has a duty to develop the record, the burden of proving disability remains on plaintiff.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Plaintiff had multiple opportunities to submit medical records into evidence and inform the ALJ whether records documenting her treatment by Dr. Multani existed.  (See AR at 9, 25, 32, 37). However, plaintiff failed to do so.  Moreover, in December 2005, the State Agency physician noted that plaintiff had submitted no new evidence and had no new complaints (AR at 210, 212), and, on the Disability Report dated February 14, 2006, plaintiff further indicated that she had not received any recent treatment for emotional or mental problems.  (AR at 99).

Thus, plaintiff failed to meet the burden to establish that she suffered from a severe medically determinable mental impairment.  The ALJ found the evidence in the record sufficient to make his disability determination and, accordingly, the ALJ's duty to develop the record was not triggered.  Thus, the ALJ's failure to recontact Dr. Multani does not constitute error.[6]

---

[6]  Plaintiff also argues that her testimony at the April 18, 2007 ALJ hearing triggered the ALJ's duty to develop the record.  (Joint Stipulation at 11).  Plaintiff alleges that she testified that she was seeing Dr. Multani at the time of the hearing and the ALJ should have contacted Dr. Multani to obtain her current treatment records.  The record, however, does not support plaintiff's assertion.  At the hearing the following exchange took place between plaintiff and the ALJ:

ALJ:        . . . You've had some, some depression.  Are you seeing any psychiatrist or psychologist?

Plaintiff:   Well, I don't - - only one that I seen is Dr. Multanny (Phonetic).  I don't, I don't, I don't even know what he is.  I don't know if he - -

ALJ:        What do you - -

Plaintiff:   - - a psychologist - -

ALJ:        What do you see him for?

Plaintiff:   The depression.

(AR at 239-40).  Plaintiff further testified that she took Trazodone (the generic name for Desyrel) and Fluoxetine (generic Prozac) for her depression and that she got these medications from Dr. Multani. (AR at 240).  Plaintiff's testimony does not, as plaintiff argues, state that she was currently seeing Dr. Multani.  See generally Robbins, 466 F.3d at 882 (where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld).  Moreover, as discussed above, plaintiff had the burden of proving disability and there is no evidence in the record that suggests that she was treated by Dr. Multani after April 2004.  Thus, plaintiff's argument fails.

**D.** **The ALJ's Credibility Findings**

Plaintiff argues that the ALJ failed to specify which portions of plaintiff's testimony, as well as the testimony of Herman Hill, plaintiff's husband, and Barbara Fields, plaintiff's mother, he discredited. (Joint Stipulation at 14-16). Defendant argues that the ALJ properly considered the statements made by plaintiff, her husband and mother and made proper findings regarding their credibility. (Joint Stipulation at 16-18).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). However, in order to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." Morgan, 169 F.3d at 599 (quoting Lester, 81 F.3d at 834). An ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." Id. An ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284; see Orn, 495 F.3d at 637-39.

In his decision, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms. (AR at 19). At the hearing, plaintiff testified that in 2002 she withdrew from school because of numbness and tingling in her hands, bad headaches and because she could hardly move her leg. (AR at 238). Plaintiff testified that both wrists hurt if she uses her fingers too long and can only use a keyboard for about an hour before both wrists begin to bother her. (AR at 241-42). Plaintiff testified that her left wrist sometimes gets enlarged and that she suffers from a great deal of pain in her right hand. (AR at 247). Plaintiff also testified that she gets frequent headaches, is nauseated at times and sometimes gets depressed and does not "want to do anything." (AR at 242, 253).

The ALJ discredited plaintiff's allegations of total disability and determined that plaintiff

1  retained the residual capacity to perform light work with some limitation in the use of her hands.

2  (AR at 14-19).  Contrary to plaintiff's allegations, the ALJ clearly identified which portions of

3  plaintiff's testimony he found not credible and properly explained what evidence undermined

4  the testimony at issue.  As discussed below, the ALJ's credibility finding is supported by

5  substantial evidence in the record, and his reasons for discrediting plaintiff's subjective

6  complaints withstands scrutiny.  See Thomas, 278 F.3d at 959 (if an ALJ's credibility finding is

7  supported by substantial evidence in the record, a reviewing court may not engage in

8  second-guessing).

9       The ALJ properly cited to plaintiff's limited treatment in concluding that plaintiff's

10  "allegations of being totally debilitated are not borne out by the evidence."  (AR at 19).  See

11  Smolen, 80 F.3d at 1284 (an ALJ may consider unexplained or inadequately explained failure

12  to seek treatment or to follow a prescribed course of treatment in weighing a claimant's

13  credibility).  The ALJ determined that the objective medical evidence and treatment records

14  show that plaintiff was generally seen for refills of her medication for diabetes mellitus and

15  hypertension, and only sporadically treated for mild symptoms resulting from her physical

16  impairments.  (AR at 19).  The ALJ noted that plaintiff had a history of ganglion cyst on the left

17  wrist, but there was no objective evidence or clinical findings that plaintiff suffered from carpal

18  tunnel syndrome.  (AR at 16).  The ALJ determined that it was reasonable that plaintiff might

19  have some pain and symptoms as a result of the ganglion cyst, but, after citing to her

20  conservative treatment, discredited her allegations of severe pain.  (Id.).

21       With regard to plaintiff's headaches, the ALJ noted that "treatment has been on an as

22  needed basis with no evidence to indicate that it should be any more aggressive."  (AR at 16).

23  The ALJ noted that medical records show no evidence of persistent complaints or any

24  significant problems related to this condition.  (Id.).  The ALJ noted that the medical records

25  show only routine and conservative treatment with regard to her back problems and no

26  evidence of any significant back problems.  (AR at 16).  In addition, the ALJ noted that plaintiff

27  admitted that her back "pain improved with lying down and taking medication."  (Id.; see AR at

28  185).  The ALJ also clearly stated that he found that plaintiff's alleged side effects of fatigue and

inability to concentrate or remember were not substantiated in the medical record.  (AR at 19).
The ALJ noted that plaintiff's depression "appears to be not severe and adequately controlled
with mild anti-depressive medication with no more than mild functional limitations." (Id.).

Such evidence of conservative treatment is sufficient to discount plaintiff's testimony
regarding the severity of her impairments.  See Parra, 481 F.3d at 750-51; see also Fair, 885
F.2d at 604.  Moreover, the record reflects that plaintiff responds well to medications.  Such a
response to conservative medical treatment undermines plaintiff's allegations regarding the
disabling nature of her pain.  The ALJ also noted that plaintiff was not always compliant with
her medications and opined that such non-compliance could reasonably account for her
symptoms and elevated blood pressure and glucose levels.[7]  (AR at 16).

Next, the ALJ stated he found plaintiff's allegations of total disability inconsistent with her
daily activities.  With respect to daily activities, the Ninth Circuit has held that a specific finding
that a claimant is able to spend a substantial part of her day engaged in pursuits involving the
performance of physical functions that are transferable to a work setting may be sufficient to
discredit a claimant's allegations of pain.  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir.
2001).  The Ninth Circuit, however, has cautioned that "many home activities are not easily
transferable to what may be the more grueling environment of the workplace, where it might
be impossible to periodically rest or take medication." Fair, 885 F.2d at 603.

Here, the ALJ noted that plaintiff's statements, and the statements of plaintiff's husband,
Herman Hill, indicate that plaintiff engaged in a "wide range of daily activities including
preparing meals, shopping, cleaning, ironing, doing the laundry, paying bills and handling her
finances, and talking on the telephone" as well as "reading, watching television, and attending
religious activities."  (AR at 19; see AR at 81-89, 90-97).  The ALJ noted that statements from
plaintiff and Mr. Hill stated plaintiff could perform very little physical activity; that she was very
limited in her ability to lift, carry, stand and walk; and that she has difficulty getting along with

---

[7] In his decision, the ALJ stated: ". . . medical records dated January 2004, December 2004, and
March 2005 note [plaintiff] had been out of medication for as long as two months at one point, which
could reasonably account for [plaintiff's] symptoms and elevated blood pressure and glucose levels."
(AR at 16).

others, remembering things and is easily distracted.  (AR at 19).  Yet, the ALJ noted that plaintiff "testified that she attends college classes from 6 pm to 9 pm, 3 days per week, and she admitted that she could likely return to her past work as a tax preparer but that she was convicted of tax fraud."  (Id.; see AR at 245, 254-55; see also AR at 237-38).  The ALJ acknowledged that "while [plaintiff's] ability to perform these activities does not necessarily prove she can obtain and maintain employment, her ability to perform these activities does tend to establish that [plaintiff] retains the physical and mental capacity to perform work like activities."  (AR at 19).  The ALJ properly cited to plaintiff's daily activities in support of his decision to discredit her testimony of disabling pain and severe functional limitations.  See SSR 95-5p; Smolen, 80 F.3d at 1284 (an ALJ may consider a claimant's daily activities in weighing a claimant's credibility).

Plaintiff also argues that the ALJ did not properly consider the testimony of Mr. Hill, plaintiff's husband.  A social security claimant may provide evidence from other sources to show the severity of her impairment and how the impairment affects her ability to work.  20 C.F.R. § 404.1513(d).  Other sources include, but are not limited to, nurse-practitioners, physicians' assistants, therapists, educational personnel, social welfare agency personnel, relatives, friends and clergy.  Id.  An ALJ may reject the testimony of an "other source" by providing reasons germane to that witness.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Mr. Hill is properly categorized as an "other source" and the ALJ may consider his opinion regarding the severity of plaintiff's impairment and how it affects her ability to work.  See 20 C.F.R. § 404.1513(d).  An ALJ must consider the testimony of a competent lay witness – a person who is in a position to observe a claimant regularly and testifies regarding the claimant's symptoms and ability to work.  Dodrill, 12 F.3d at 919.  However, an ALJ need not meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, at *25 (C.D. Cal. Sept. 27, 2005).  Silent disregard of competent lay witness testimony is harmless error if the Court can confidently conclude that no reasonable ALJ, when

1  fully crediting the testimony at issue, could reach a different disability determination.  Stout v.

2  Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

3      Mr. Hill completed a third-party questionnaire describing plaintiff's functional limitations

4  dated June 15, 2005.  (AR at 81-89).  When asked to describe what plaintiff does all day, Mr.

5  Hill stated: "She eats, talk, watch television, take medicine, use the restroom, sleep, housework,

6  use the phone, pay bills, cook, complain feel depressed, express concerns, show fear, some

7  interaction with others. [sic]"  (AR at 81).  Mr. Hill indicated that plaintiff takes care of him and

8  her two boys.  (AR at 82).  He stated that plaintiff prepares meals once or twice a week, does

9  laundry and some cleaning, drives a car, goes out alone, shops in stores for food, household

10  items and clothes and is able to pay bills, count change, handle a savings account, and use a

11  checkbook or money orders.  (AR at 83-84).  Mr. Hill then indicated that plaintiff does very little

12  physical activity, that her condition affects her ability to do a number of work related activities[8]

13  and that she can only walk 100 to 150 yards before needing to rest for 5 to 10 minutes.  (AR

14  at 86).  He also stated that plaintiff is not good at remembering details for a long period of time,

15  that she reads "ok," may need to read written instructions several times, and does not handle

16  stress well.  (AR at 86-87).  Mr. Hill remarked that the combination of plaintiff's medications

17  have an effect "on her ability to concentrate, handle stress and definitely has caused physical

18  limitations to her body."  (AR at 88).  He went on to note that "her days are filled with up and

19  down feelings of being ok, not ok.  Reading compression [sic] is almost zero . . . staying

20  focused is a real challenge for her. Medicine causes mood swings dizziness and sleep . . . she

21  loves to be isolated."  (AR at 88).

22      The ALJ discussed Mr. Hill's testimony in his decision and noted that Mr. Hill's

23  statements indicate that plaintiff engages in a wide range of daily activities and that, although

24  plaintiff's ability to perform these activities does not necessarily prove she can obtain and

25  maintain employment, her ability to perform these activities establishes that she retains the

26  ─────────────

27      [8]  When asked to circle the listed items that plaintiff's illness, injuries or conditions affected, Mr.
   Hill circled all of the listed items: lifting, squatting, bending, standing, reaching, walking, sitting,
   kneeling, talking, hearing, seeing, memory, stair-climbing, using hands, completing tasks,

28  concentration, understanding, following instructions and getting along with others.  (AR at 86).

physical and mental capacity to perform work like activities.  (AR at 19).  The ALJ also noted that the statements made by Mr. Hill "concerning the intensity, duration and limiting effects" of plaintiff's alleged symptoms "are not entirely credible given the lack of supporting objectiv e evidence."  (<u>Id.</u>).  The ALJ properly cited to valid bases for discrediting Mr. Hill's testimony an d, thus, the Court finds that the ALJ did not err in his treatment of Mr. Hill's testimony.  <u>See</u> <u>Dodrill</u>, 12 F.3d at 919 (an ALJ may reject the testimony of an "other source" by providing reasons germane to that witness).

In addition, even if the ALJ fully credited Mr. Hill's testimony, the Court finds that no reasonable ALJ could have reached a different disability determination based solely on his testimony.  <u>See</u> <u>Stout</u>, 454 F.3d at 1056.  Thus, the Court finds that even if the ALJ erred by discrediting Mr. Hill's testimony, any such error is harmless and cannot serve as the basis for remand.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1528, 404.1529 (objective medical evidence of an underlying impairment is necessary to establish disability).

Plaintiff also argues that the ALJ did not properly consider the testimony of Barbara Fields, plaintiff's mother.  At the hearing, Ms. Fields testified that plaintiff's testimony was true and accurate to the best of her knowledge and added:

> [Plaintiff] stays depressed.  She stays stressing [sic] out, and I try to comfort her and talk to her and be with her, but it, it doesn't seem to happen.  She cries a lot.  She - - her hands swell when she try [sic] to type and stuff.  That's why the, the time distance between her working and everything, once she worked and hour, her hands swells, and it usually - - they usually stay for about two or three days.  You soak them in water and salt and stuff like that trying to get them down, but they usually just puff up really bad.

(AR at 246).

In the decision, the ALJ noted that Ms. Fields testified at the hearing that plaintiff's

testimony was true and accurate.  (AR at 19; see AR at 246).  The ALJ noted that Ms. Fields testified that plaintiff was stressed and depressed, that she cried a lot and that her hand swells when she works at a keyboard too long.  (AR at 19; see AR at 246).  After considering the medical evidence and the evidence in the record, the ALJ concluded that her statements "concerning the intensity, duration and limiting effects of these symptoms are simply not entirely credible given the lack of supporting objective evidence."  (AR at 19).  The Court finds that the lack of supporting evidence for Ms. Fields' brief testimony regarding the severity of plaintiff's symptoms is a proper basis to discredit Ms. Fields' testimony.  See Dodrill, 12 F.3d at 919.  Thus, the ALJ did not err in his consideration of her testimony.

Moreover, even if the ALJ fully credited Ms. Fields' testimony, the Court finds that no reasonable ALJ could have reached a different disability determination based solely on her testimony, which simply echoed and supported plaintiff's own subjective complaints.  See Stout, 454 F.3d at 1056.  Thus, the Court finds that even if the ALJ had erred by discrediting Ms. Fields' testimony, any such error is harmless and could not serve as the basis for remand.  See Burch, 400 F.3d at 679 (a decision of the ALJ will not be reversed for errors that are harmless).

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 3, 2008

_____/s/-Jennifer T. Lum_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE